KILPATRICK TOWNSEND & STOCKTON LLP
ROGER L. COOK (State Bar No. 55208)
ROBERT D. TADLOCK (State Bar No. 238479)
Two Embarcadero Center Eighth Floor
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email: rcook@kilpatricktownsend.com
           rtadlock@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
ERIC M. HUTCHINS (State Bar No. 245462)
1080 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 326-2400
Facsimile:  (650) 326-2422
Email: ehutchins@kilpatricktownsend.com

Attorneys for Plaintiff
SIDENSE CORP.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDENSE CORP., a Canadian Corporation<br><br>    Plaintiff,<br><br>    v.<br><br>KILOPASS TECHNOLOGY INC., a California Corporation, and CHARLIE CHENG, an individual,<br><br>    Defendants. | Case No. 3:11-CV-04112 SI<br><br>**SECOND AMENDED COMPLAINT FOR DEFAMATION, UNFAIR COMPETITION UNDER LANHAM ACT § 43(A), INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND UNFAIR COMPETITION UNDER BUS. & PROF. CODE § 17200**<br><br>**JURY TRIAL DEMANDED** |



SECOND AMENDED COMPLAINT
CASE NO. 3:11-CV-04112 SI

Plaintiff Sidense Corp. ("SIDENSE") brings this civil action against Kilopass Technology, Inc. ("KILOPASS") and Mr. Charlie Cheng ("CHENG"), and for its complaint alleges as follows:

## PARTIES

1. SIDENSE is a Canadian Corporation with its principal place of business at 84 Hines Road, Suite 260, Ottawa, Ontario, Canada, K2K 3G3.

2. KILOPASS is a California Corporation with its principal place of business at 3333 Octavius Drive, Santa Clara, California 95054.

3. CHENG is the Chief Executive Officer of KILOPASS and, on information and belief, is a citizen of the United States residing in the Northern District of California.

## JURISDICTION AND VENUE

4. This Complaint involves a citizen of a foreign state and citizens of California. SIDENSE is a Canadian Corporation. KILOPASS is a California corporation. On information and belief, CHENG is a citizen and resident of California. The amount in controversy exceeds $75,000. Subject matter jurisdiction is, therefore, proper under 28 U.S.C. § 1332. Additionally, the Court has subject matter jurisdiction over Sidense's Lanham Act claim pursuant to 28 U.S.C. § 1331.

5. KILOPASS admits that personal jurisdiction and venue are appropriate in this district through its Complaint filed in *Kilopass Technology, Inc. v. Sidense Corp.*, Case No. C 10-02066 SI. Venue is further appropriate in this district because KILOPASS and CHENG are subject to personal jurisdiction here, reside here, and have committed a substantial number of the alleged acts described below here.

## INTRADISTRICT ASSIGNMENT

6. This action should be, and has been, assigned to the San Francisco Division because SIDENSE and KILOPASS are parties to *Kilopass Technology, Inc. v. Sidense Corp.*, Case No. C 10-02066 SI currently pending in that Division, and CHENG is CEO of KILOPASS.



SECOND AMENDED COMPLAINT - 1 -
CASE NO. 3:11-CV-04112 SI

**GENERAL ALLEGATIONS**

7. SIDENSE, founded in 2004, has recently become increasingly recognized as the leading innovator in the emerging market for "1T" one-time programmable (OTP) embedded non-volatile memory (eNVM). SIDENSE's 1T-Fuse™ memory products provide the industry's smallest footprints, lowest power, fastest access times, highest densities, and highest reliability. SIDENSE licenses its technology to customers who then employ it in a variety of integrated circuits, which are then placed in a consumer electronics product such as a smartphone or set top box. The United States Patent and Trademark Office ("USPTO") granted SIDENSE United States Patent No. 7,402,855 (the "'855 patent") for the inventions embodied in the 1T-Fuse™ memory products.

8. With market demand moving from yesterday's larger and less efficient antifuse memory to SIDENSE's 1T-Fuse™ memory designs, and becoming increasingly unable to fairly compete with SIDENSE's technology on the merits, KILOPASS, a SIDENSE competitor, and CHENG, KILOPASS' CEO, embarked on a plan and scheme to (1) harass SIDENSE, its customers and potential customers, and (2) try to intimidate and frighten SIDENSE customers, potential customers, and others in the market away from doing business with SIDENSE.

9. In furtherance of this plan and scheme, KILOPASS and CHENG embarked upon a campaign of publishing false and misleading information in press releases and other advertisements to the general public including to customers and potential customers, to the customers and potential customers of customers, and to the officers, directors, employees and attorneys of customers, potential customers, and of customers' customers and potential customers' customers; in mass e-mail mailings to individuals including, on information and belief, the officers, directors, employees, and attorneys of customers, potential customers, and of customers' customers and potential customers; and in in-person communications to numerous individuals including, on information and belief, the officers, directors, employees, and attorneys of customers, potential customers, and of customers' customers and potential customers. On information and belief, KILOPASS and CHENG have embarked upon this campaign of false and misleading information to harass SIDENSE and its customers, to create fear, uncertainty, and



SECOND AMENDED COMPLAINT                                                    - 2 -
CASE NO. 3:11-CV-04112 SI

doubt concerning SIDENSE and its technology in the marketplace, to prevent SIDENSE's customers and potential customers from doing business and/or continuing to do business with SIDENSE, but instead to do business with KILOPASS, and to force SIDENSE to divert time, money, and effort to counteract KILOPASS' and CHENG's misinformation campaign.

10. Pursuant to this campaign of false and misleading information, on May 22, 2008, KILOPASS, with the knowledge and acquiescence of CHENG, told one company and, on information and belief, KILOPASS, with the knowledge and acquiescence of CHENG, has told other Sidense customers and/or potential customers that, based upon Kilopass' own "in silicon" evaluation, Sidense's technology was not commercially viable, whereas Kilopass knew or should have known that these representations were false. These statements were false since Kilopass had never "in silicon," or otherwise, evaluated Sidense's 1T bit cell technology, and the tests Kilopass was referring to were of its own 1T bit cell technology which Kilopass knew was materially different from the Sidense 1T bit cell at least because it had a reverse wordline bitline architecture, and had replaced one of the two electrically conductive doped semiconductor regions on either end of the channel region with a non-conductive insulator, *i.e.* shallow trench isolation (STI). The purpose and intent of this false information was to sell Kilopass technology.

11. Pursuant to this campaign of false and misleading information, with the knowledge and acquiescence of KILOPASS and CHENG, in May 2009, KILOPASS' marketing director, Linh Hong, published a "White Paper" entitled "Comparison of Embedded Non-Volatile Memory Technologies and Their Applications," which included the statement "Kilopass was the first to pioneer antifuse in a standard CMOS process with no additional processing steps. Kilopass holds patents for several flavors of the cells, including the 1T and 2T," followed by two antifuse bit cell illustrations labeled "Antifuse Bit Cell-2T" and "Antifuse Bit Cell-1T" implying that the bit cells illustrated therein depicted "the [Kilopass] 1T and 2T" patented antifuse cells. However, the bit cell illustration labeled "Antifuse Bit Cell-1T" actually depicted Sidense's 1T bit cell. Through Hong, KILOPASS and CHENG knowingly used Sidense's image even though Hong and/or Kilopass knew or should have known that Sidense's 1T bit cell is not shown or described anywhere in Kilopass' patents. To persons familiar with the Sidense bit cell, this would have

suggested that the Sidense bit cell structure was specifically disclosed in the Kilopass 1T patents and that, rather than having been independently developed, Sidense's bit cell was merely a copy of the Kilopass bit cell. To such persons, this also would have suggested that Sidense would almost certainly be found to have infringed upon the Kilopass 1T patents. The purpose and intent of this false information was to sell Kilopass technology.

12. Pursuant to this campaign of false and misleading information, KILOPASS and CHENG have prominently featured, and continue to feature, the following statement on its website under the topic heading "**1 T Bitcell – A Split Channel Device**":

> Kilopass' 1T antifuse bit cell patent, issued in 2004, is a split channel device consisting of a thin (core) gate and a thick (I/O) gate.

This statement is false, misleading and designed to make it appear that Sidense, which was founded in 2004, entered into business to copy Kilopass' 1T technology, which is demonstrably untrue. On May 6, 2004, SIDENSE's founder, Wlodek Kurjanowicz, filed a basic patent application describing and claiming his "split channel" invention using thin "core" oxide and thick "I/O" oxide in a gate structure, which ultimately issued as U.S. Pat No. 7,402,855. The earliest Kilopass patent directed to thin/thick gate oxide of any type was Peng U.S. Pat. No. 6,940,751 which did not issue until September 6, _**2005**_ (long after SIDENSE was founded and had filed its basic split channel patent application), and did not teach the use of "core" and "I/O" oxide to make a thin/thick oxide device, and did not teach or even mention a "split channel" device. KILOPASS' knowingly false statements about its own patents were made in bad faith. Moreover, the USPTO issued Mr. Kurjanowicz's '855 patent only after carefully considering Peng's '751 patent. Additionally, Sidense has not licensed Kilopass, under Sidense's '855 patent, to sell or license Sidense's patented 1T antifuse bit cell using thin (core) and thick (I/O) gate oxide to make a split channel device. The purpose and intent of this false information was to sell Kilopass technology.

13. Pursuant to this campaign of false and misleading information, despite its failure to invalidate even a single one of SIDENSE's '855 patent claims during reexamination, on at least August 12, 2010, KILOPASS and CHENG sent an email from kilopass.team@kilopass.com to Customer and, on information and belief, a substantial number of other of customers and potential



SECOND AMENDED COMPLAINT                                                                                         - 4 -
CASE NO. 3:11-CV-04112 SI

1  customers stating: "US Patent and Trademark Office (USPTO) *Invalidates* All Claims of SIDENSE's Key Patent ('855)," (emphasis added). The email lists Erika Duscha as Kilopass' Marcom Manager and as the person to be contacted. This email included a press release regarding Kilopass' reexamination of the '855 patent and implied that SIDENSE had been unable to persuade the USPTO that SIDENSE's technology was materially different from the KILOPASS prior art patents, and that SIDENSE did not own the intellectual property rights which it had been selling, and offering to sell, to customers and potential customers. In fact, the USPTO has never invalidated any claims of the SIDENSE '855 patent. Instead, on January 26, 2011, the USPTO issued an "Action Closing Prosecution" of the '855 patent reexamination, specifically confirming the patentability of all original claims over the KILOPASS 1T prior art patents, and also confirming the patentability of additional new claims that SIDENSE added during the *inter partes* re-examination proceedings over the KILOPASS 1T prior art patents. KILOPASS and CHENG are well aware that this assertion is false since KILOPASS has fully participated in the *inter partes* re-examination proceedings. The purpose and intent of this false information was to sell Kilopass technology.

14.  Pursuant to this campaign of false and misleading information, on at least August 8, 2011, KILOPASS, through CHENG and others have stated to at least several customers and, on information and belief, a substantial number of other Sidense customers and potential customers that "SIDENSE continues to offer [its 1T intellectual property] for license . . . knowing [that a] substantial portion of its ['855] patent claims have been rejected." This statement is intended to imply that SIDENSE lacks ownership of the intellectual property rights it has been selling and offering to sell to its customers and potential customers. In fact, as stated above, in January 2011, the USPTO issued an "Action Closing Prosecution" of the '855 patent reexamination, specifically confirming the patentability of all original claims over the KILOPASS 1T prior art patents, and also confirming the patentability of additional new claims that SIDENSE had added during the inter partes re-examination proceedings. KILOPASS and CHENG are well aware that this assertion is false since KILOPASS has fully participated in the *inter partes* re-examination proceedings. The purpose and intent of this false information was to sell Kilopass technology.



SECOND AMENDED COMPLAINT                                                                                                        - 5 -
CASE NO. 3:11-CV-04112 SI

1   15.   Pursuant to this campaign of false and misleading information, at least as early as
2   February 2011, KILOPASS and CHENG began publishing statements falsely indicating that
3   SIDENSE's *inter partes* re-examination proceedings in the USPTO regarding KILOPASS' United
4   States Patent No. 6,940,751 ('751) had been concluded in KILOPASS' favor, thereby foreclosing
5   SIDENSE from challenging the validity of that patent in defense of KILOPASS' patent
6   infringement lawsuit, including a February 2011 press release which falsely stated that, "with the
7   USPTO's [recent] pronouncement on the '751 patent, Sidense can no longer use patent invalidity
8   as a possible defense [in the patent infringement litigation]," so that this ruling "Strengthens
9   Kilopass' Patent Case; [and] Leaves Sidense Few Options." (emphasis in the original). The press
10  release identifies Nanette Collins and Jonah McLeod as the relevant contacts at Kilopass. In fact,
11  the referenced USPTO ruling was interlocutory and, therefore, does not foreclose SIDENSE from
12  challenging invalidity of the '751 patent in the infringement litigation. The purpose and intent of
13  this false information was to sell Kilopass technology.

14   16.   Pursuant to this campaign of false and misleading information, on information and
15  belief, in about February 2011, KILOPASS and CHENG offered to pay Clive Maxfield, editor of
16  the EE Times Programmable Logic Design Line website, to write an article about KILOPASS'
17  patent infringement lawsuit against SIDENSE entitled "STOP! Are You Gambling on Your
18  Memory IP?" in order to make it falsely appear that the information and viewpoints appearing in
19  the article were the independent and unbiased observations of Mr. Maxfield and the EE Times,
20  including that utilizing SIDENSE's technology might "violate [Kilopass'] patents… [and] you
21  might find yourself in court at some stage." This article, which was published in the EE Times on
22  March 3, 2011, included self-serving statements of CHENG, and a section entitled "The Litigation
23  Landscape" which warned that persons who infringe patents could be sued in the United States
24  courts, the ITC, and in the courts of Japan and other foreign countries, and which described
25  litigation in the United States courts and ITC as costing up to $10 million or more, thereby
26  implying that Mr. Maxfield and EE Times had independently, and without bias, concluded that
27  companies whose products embody SIDENSE's technology could be exposed to costly litigation
28  of that sort. On information and belief, after Mr. Maxfield had written the article, KILOPASS and



SECOND AMENDED COMPLAINT                                                                    - 6 -
CASE NO. 3:11-CV-04112 SI

CHENG reneged on the agreement to pay Mr. Maxfield for writing the article. The purpose and intent of this false information was to sell Kilopass technology.

17. Pursuant to this campaign of false and misleading information, in about August 2010, KILOPASS and CHENG began contacting SIDENSE customers and potential customers threatening to imminently sue them as patent infringers in Federal District Court (for damages for alleged infringement and an injunction against continued alleged infringement) and/or as respondents in a legal action in the International Trade Commission (to prevent customers, and customers' customers, from shipping their products containing the allegedly infringing technology into the United States) and/or in Japan (for damages for alleged patent infringement and injunction against continued alleged infringement), falsely asserting that its 6,940,751, 6,777,757, and 6,856,540 patents were broad enough to cover SIDENSE's 1T-Fuse™ memory products. For example, on information and belief, in December 2010 and February 2011, KILOPASS, through its Vice President Lee Cleveland, told a Sidense customer's customer, that KILOPASS would file an International Trade Commission action against products embodying SIDENSE technology in February 2011. In fact, none of KILOPASS' multiple threats legitimately threatened or resulted in imminent litigation against any SIDENSE customer, potential customer, or any customers' customers or potential customers, for infringement based upon use or potential use of SIDENSE's 1T-Fuse™ technology – not in any court, nor in the International Trade Commission. The purpose and intent of this false information was to sell Kilopass technology.

18. Pursuant to this campaign of false and misleading information, on information and belief, by at least June 2011, KILOPASS, including through CHENG, had begun falsely telling customers and potential customers that SIDENSE is not financially stable, including but not limited to statements that SIDENSE is no longer commercially viable, that SIDENSE would soon be bankrupt, and that SIDENSE would soon go out of business. For example, on June 28, 2011, KILOPASS sent an e-mail to a number of SIDENSE customers and potential customers characterizing SIDENSE as "start-up with limited income and capital," while jointly implying that SIDENSE would not be able to adequately indemnify its customers in possible infringement actions brought by KILOPASS. On or about July 19, 2011, CHENG on behalf of Kilopass stated



to a SIDENSE customer and licensee that "Sidense is likely to go bankrupt before next year." Additionally, on at least August 5, 2011, KILOPASS, through CHENG, sent an e-mail to a current SIDENSE customer and licensee in which CHENG cited his "concerns over Sidense viability" as motivation for possible litigation against SIDENSE customers: "Recently, due to concerns over Sidense viability, we have no choice but to turn our attention to the licensees." In fact, SIDENSE has been financially stable, commercially viable, has not been going bankrupt or going out of business and has recently received $5.6 million in additional fundraising. The purpose and intent of this false information was to sell Kilopass technology.

19. Pursuant to this campaign of false and misleading information, in June 2011, KILOPASS and CHENG began telling customers and potential customers that SIDENSE was refusing to take responsibility for its customers' allegedly infringing chips and that SIDENSE was telling the Court that its customers, rather than SIDENSE, should be sued for patent infringement. For example, in a mass e-mailing dated June 28, 2011, sent to officers, directors, employees, and attorneys of customers and potential customers, KILOPASS and CHENG said "Sidense has refused to take responsibility for its customers' chips that contain the embedded Sidense OTP, which stands accused of patent infringement," and that "Sidense indicat[ed] to the court that it is its licensees who should be charged as direct infringers." In fact, SIDENSE has never refused to take responsibility for its customers' allegedly infringing chips, and never said that its customers should be sued for patent infringement or charged as infringers. To the contrary, SIDENSE is vigorously defending KILOPASS' accusations of patent infringement, including KILOPASS' accusations in the District Court patent litigation that SIDENSE's customers' products which embody SIDENSE technology infringe the KILOPASS patents.

## FIRST CAUSE OF ACTION

(Defamation)

20. SIDENSE realleges and incorporates by reference paragraphs 1 through 19 above as though fully set forth herein.



1    21.    At all relevant times alleged herein, all KILOPASS employees were acting in their
2    official capacity as KILOPASS employees and, therefore, their actions are attributable to
3    KILOPASS.

4    22.    KILOPASS and CHENG have made false and misleading representations to
5    SIDENSE customers and others including at least: (1) that Sidense's 1T technology is not
6    commercially viable even though Sidense has successfully licensed its technology and taken
7    market share from Kilopass; (2) that the USPTO had invalidated all claims in Sidense's '855
8    patent even though the USPTO never did; (3) that Sidense is licensing technology under the '855
9    patent despite knowing that a substantial portion of the claims in the '855 patent have been
10   rejected even after the USPTO affirmed all claims in the '855 patent and found additional new
11   claims patentable; (4) that Kilopass would imminently file suit against Sidense's customers if they
12   would use, or continue to use, Sidense's technology; (5) that Sidense was not financially stable,
13   not commercially viable, and would soon be bankrupt; and (6) that Sidense has refused to take
14   responsibility for its customers' chips that contain the embedded Sidense OTP in Kilopass' lawsuit
15   against Sidense. These statements have adversely affected SIDENSE's business and reputation
16   and are defamatory without necessity of explanatory matter.

17   23.    KILOPASS' and CHENG's statements establish a prima facie case of actionable
18   defamation because they involve SIDENSE's business, were published, were and are false, and
19   were made with the knowledge that they were false, and with spite, hatred, and ill will toward
20   SIDENSE. KILOPASS and CHENG had no reasonable grounds to believe the statements were
21   true, and KILOPASS and CHENG acted with reckless disregard for ascertaining the truth. Thus,
22   KILOPASS' and CHENG's statements are actionable, and actionable per se, and SIDENSE is
23   entitled to damages in an amount to be proven at trial.

24   24.    As a proximate result of KILOPASS' and CHENG's defamatory statements,
25   SIDENSE has suffered loss of customers, harm to its reputation, and was exposed to contempt.
26   SIDENSE therefore suffered specific and general damages, including punitive damages, in an
27   amount to be proven at trial.

28   25.    As a proximate result of KILOPASS' and CHENG's defamatory statements,



SECOND AMENDED COMPLAINT                                                              - 9 -
CASE NO. 3:11-CV-04112 SI

1  SIDENSE has suffered and will continue to suffer irreparable harm unless KILOPASS and
2  CHENG cease making the statements alleged herein. SIDENSE has no adequate remedy at law
3  and is entitled to preliminary and permanent injunctive relief.

4  **SECOND CAUSE OF ACTION**
5  (Federal Unfair Competition False Advertising/Disparagement)
6  (Lanham Act § 43(a); 15 U.S.C. § 1125(a))

7  26.  SIDENSE realleges and incorporates by reference paragraphs 1 through 19 above
8  as though fully set forth herein.

9  27.  KILOPASS and CHENG have used and continue to use false or misleading
10  representations of facts portraying SIDENSE's products in interstate commerce in promotion of its
11  own products with the intent to materially affect the buying decisions of prospective customers.

12  28.  KILOPASS' and CHENG's false advertising and disparagement includes at least:
13  (1) publishing a "White Paper" on www.kilopass.com using an image of Sidense's 1T-Fuse™
14  memory product and claiming the design was disclosed in Kilopass' patents rather than having
15  been independently developed by Sidense; (2) stating on www.kilopass.com that Kilopass
16  invented the split gate design in 2004 to imply that Sidense copied Kilopass' design; (3)
17  distributing a press release via email, on information and belief, to a substantial number of
18  Sidense's customers and potential customers, stating that the USPTO had invalidated all claims in
19  Sidense's '855 patent; (4) distributing a promotional PowerPoint to, on information and belief, a
20  substantial number of Sidense's customers and potential customers stating that SIDENSE
21  continues to offer its 1T intellectual property for license knowing that a substantial portion of its
22  '855 patent claims have been rejected even after the USPTO affirmed all claims in the '855 patent;
23  (5) stating in a press release that the USPTO's interim decision affirming the claims in the '751
24  patent foreclosed SIDENSE from challenging the validity of that patent in defense of KILOPASS'
25  patent infringement lawsuit; and (6) hiring an editor of the EE Times to publish an article, thereby
26  falsely portraying the article as an independent and unbiased discussion of Kilopass' lawsuit.

27  29.  On information and belief, KILOPASS' and CHENG's acts alleged herein had a
28  least a tendency to deceive a substantial number of Sidense's customers and potential customers



SECOND AMENDED COMPLAINT                                                                             - 10 -
CASE NO. 3:11-CV-04112 SI

1  and were material in that they were likely to influence the purchasing decisions of those in the
2  marketplace.

3      30.    KILOPASS' and CHENG's conduct complained of herein has caused SIDENSE
4  injury, is malicious, fraudulent, knowing, willful, and deliberate entitling SIDENSE to an
5  accounting of KILOPASS' and CHENG's profits, increased damages, and attorneys' fees and
6  costs incurred in prosecuting this action under 15 U.S.C. § 1117.

7      31.    As a proximate result of KILOPASS' and CHENG's false and misleading
8  promotions, SIDENSE has suffered and will continue to suffer irreparable harm unless
9  KILOPASS and CHENG cease making the statements alleged herein. SIDENSE has no adequate
10 remedy at law and is entitled to preliminary and permanent injunctive relief.

### THIRD CAUSE OF ACTION

(Intentional Interference With Contractual Relations)

13     32.    SIDENSE realleges and incorporates by reference paragraphs 1 through 31 above
14 as though fully set forth herein.

15     33.    At all relevant times alleged herein, all KILOPASS employees were acting in their
16 official capacity as KILOPASS employees and, therefore, their actions are attributable to
17 KILOPASS.

18     34.    SIDENSE and its customers are parties to End User License Agreements. At all
19 times alleged herein, KILOPASS and CHENG were aware of the End User License Agreements
20 between SIDENSE and its customers and intended by their acts, as alleged in paragraphs 10-19, to
21 interfere with these contractual relationships or make performance under the contracts more
22 difficult.

23     35.    On information and belief, as a proximate result of the acts of KILOPASS and
24 CHENG and their agents as alleged herein, performance of these End User License Agreements
25 by SIDENSE's customers has become more difficult and, in certain instances, has ceased
26 completely.

27     36.    As a proximate result of KILOPASS' and CHENG's acts alleged herein, SIDENSE
28 has suffered and will continue to suffer irreparable harm unless KILOPASS ceases making the



SECOND AMENDED COMPLAINT     - 11 -
CASE NO. 3:11-CV-04112 SI

1  statements alleged herein. SIDENSE has no adequate remedy at law and is entitled to preliminary

2  and permanent injunctive relief.

### FOURTH CAUSE OF ACTION

(Intentional Interference With Prospective Economic Advantage)

37.  SIDENSE realleges and incorporates by reference paragraphs 1 through 31 above as though fully set forth herein.

38.  At all relevant times alleged herein, all KILOPASS employees were acting in their official capacity as KILOPASS employees and, therefore, their actions are attributable to KILOPASS.

39.  KILOPASS and CHENG deliberately interfered with SIDENSE's prospective economic advantage. SIDENSE has enjoyed prospective economic relationships with customers and prospective customers that were of substantial economic benefit to SIDENSE. With knowledge of these valuable relationships, KILOPASS' and CHENG's acts, as alleged in paragraphs 10-19 designed to interfere with and disrupt SIDENSE's relationships with existing and prospective customers. KILOPASS' and CHENG's actions were independently wrongful as they violated both Federal and California law as alleged herein.

40.  KILOPASS and CHENG acted both oppressively and maliciously with intent to cause injury to SIDENSE and with conscious disregard of the rights of others. As such SIDENSE is entitled to exemplary damages, in addition to compensatory damages, as permitted by law.

41.  As a proximate result of KILOPASS' and CHENG's defamatory statements, SIDENSE has suffered and will continue to suffer irreparable harm unless KILOPASS and CHENG cease making the statements alleged herein. SIDENSE has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief.

### FIFTH CAUSE OF ACTION

(Unfair Competition Under California Business and Professions Code § 17200)

42.  SIDENSE realleges and incorporates by reference paragraphs 1 through 31 above as though fully set forth herein.

43.  KILOPASS' and CHENG's conduct as alleged herein in paragraphs 10-19



SECOND AMENDED COMPLAINT                                                                              - 12 -
CASE NO. 3:11-CV-04112 SI

1  constitute "unlawful, unfair, or fraudulent business act[s] or practice[s]" within the meaning of California Business and Professions Code § 17200 *et. seq*.

44. As a direct and proximate cause of KILOPASS' and CHENG's wrongful conduct, SIDENSE has been and will continue to be harmed and KILOPASS and CHENG have been and will continue to be unjustly enriched.

45. As a direct and proximate result of KILOPASS' and CHENG's wrongful conduct, SIDENSE is entitled to injunctive relief, restitution, and an order of disgorgement of all of KILOPASS' and CHENG ill-gotten gains from its unlawful, unfair, or fraudulent business acts or practices.

## **PRAYER FOR RELIEF**

SIDENSE prays for judgment as follows:

1. For judgment that the statements alleged herein are defamatory;

2. For judgment that KILOPASS and CHENG have engaged in federal and California state unfair competition, including false advertising and disparagement;

3. For judgment that KILOPASS AND CHENG have engaged in intentional interference in contractual relations and prospective economic advantage;

4. For judgment that KILOPASS and CHENG are jointly and severally liable for the aforesaid wrongful and unfair acts;

5. For preliminary and permanent injunctive relief enjoining the aforesaid wrongful and unfair acts by KILOPASS and CHENG, and those persons acting in concert with KILOPASS and CHENG, including related individuals, entities, customers, agents, or representatives pursuant to 15 U.S.C. § 1116 and California Business and Professions Code § 17203;

6. For SIDENSE's actual damages sustained as a result of the acts alleged herein, together with prejudgment interest, according to proof;

7. For an accounting of the profits of KILOPASS and CHENG resulting from its wrongful and unfair acts alleged herein;

8. For restitution of any profits acquired by means of KILOPASS' and CHENG's



SECOND AMENDED COMPLAINT                                                                                         - 13 -
CASE NO. 3:11-CV-04112 SI

unfair competition;

9. For enhanced damages pursuant to 15 U.S.C. § 1117;

10. For punitive damages;

11. For an award of attorneys' fees pursuant to 15 U.S.C. § 1117 or as otherwise permitted by law;

12. For SIDENSE's costs of suit, including reasonable litigation expenses, pursuant to 15 U.S.C. § 1117 or as otherwise permitted by law; and

13. For any additional relief the Court deems just and proper.

DATED: January 26, 2012         Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By: */s/ Roger L. Cook*
    ROGER L. COOK

Attorneys for Plaintiff
SIDENSE CORP.



**DEMAND FOR JURY TRIAL**

Plaintiff SIDENSE hereby demands a trial by jury of all issues triable by jury pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a).

DATED: January 26, 2012

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Roger L. Cook*
    ROGER L. COOK

Attorneys for Plaintiff
SIDENSE CORP.

63946664 v1
