1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SIDENSE CORP.,

         Plaintiff,

  v.

KILOPASS TECHNOLOGY INC. and
CHARLIE CHENG,

         Defendants.
_____/

No. C 11-04112 SI

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants Kilopass Technology, Inc., and Charlie Cheng, CEO of Kilopass (collectively "defendants"), have filed a motion for summary judgment in this business torts case. A hearing was held on this matter on August 10, 2012. Having considered the papers submitted, and for good cause shown, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff Sidense Corporation is active in "the emerging market for '1T' one-time programmable embedded non-volatile memory ('eNVM')." First Amend. Compl. ("FAC") ¶ 7. This business torts case was filed by Sidense after one of its competitors, Kilopass Technologies Inc., sued Sidense for patent infringement. *See Kilopass v. Sidense*, CV 10-2066 SI (N.D.Cal. 2010).

Kilopass Technology, Inc. markets "a novel way of storing data permanently inside integrated circuits by creating a breakdown in the transistor, safely and reliably, now referred to as embedded Non-

United States District Court
For the Northern District of California

Volatile Memory." *Kilopass v. Sidense*, CV 10-2066 SI, FAC ¶ 8.  Defendant Cheng is the CEO of Kilopass.  Kilopass's complaint for patent infringement, filed in 2010,  alleged that Sidense's 1T eNVM technology infringed Kilopass Patents No. 6,940,751 (the "'751 Patent'"), 6,777,757 (the "'757 Patent'"), and 6,856,540 (the "'540 Patent'").   Kilopass alleged that Sidense infringes Kilopass' patented eNVM technology, which programs memory cells by using voltage to "break down" gate dielectrics in transistors into damaged states.[1]   Kilopass also brought claims for trade libel and defamation, intentional interference with prospective economic relations, false advertisement and disparagement in violation of the Lanham Act, and unfair competition.  On December 13, 2010, the Court dismissed the cause of action for trade libel and defamation.  The remaining claims are currently being litigated before this Court.

On August 19, 2011, Sidense filed its initial complaint in this related action against Kilopass; on October 25, 2011, Sidense withdrew that complaint and filed a First Amended Complaint ("FAC"). Sidense's FAC alleged that Kilopass and Cheng "embarked on a plan and scheme to (1) harass Sidense, its customers and potential customers, and (2) try to intimidate and frighten Sidense customers, potential customers, and others in the market away from doing business with Sidense."  FAC ¶ 8.   Sidense alleged that Kilopass, in furtherance of this plan, "embarked on a campaign of publishing false and misleading information in press releases, other advertisements . . . mass emails . . . and in-person communications to numerous individuals . . . "  FAC ¶ 9.  In support of its claims, Sidense described ten statements allegedly made by Kilopass, set forth in paragraphs 10 through 19 of the FAC.  Based on the ten statements, Sidense brought five causes of action against Kilopass: (1) defamation, (2) federal unfair competition false advertising/disparagement (in violation of the Lanham Act), (3) intentional interference with contractual relations, (4) intentional interference with prospective economic advantage, and (5) unfair competition under California Business and Professional Code § 17200.  Some of the statements were alleged to be defamatory; others false advertising; and still others were alleged as both.

---

[1]Dielectrics are not to be confused with dialectics, a method of logical argument for resolving disagreement. *See, e.g.,* Marx, Karl, *Capital*, Afterword to the Second German Edition, Vol. 1 (1873) (discussing dialectical materialism).  It is true, however, that the dialectics between the parties in these two cases has also broken down into a damaged state.

On January 4, 2012, the Court granted in part and denied in part Kilopass' motion to dismiss Sidense's FAC.  *See* Dkt. 35.  The Court found that a number of the ten statements allegedly made by Kilopass either were not actionable as barred by the applicable statute of limitations, or failed to state a claim for defamation or false advertising.  Following the order on dismissal, Sidense filed a Second Amended Complaint ("SAC").  The remaining statements still at issue are as follows:

> ¶ 10: Kilopass' statement, made on May 22, 2008, to a Sidense potential customer that, based on Kilopass' own tests, Sidense's 1T technology was not commercially viable.
> ¶ 11: Kilopass' May 2009 white paper allegedly using Sidense's product image to falsely depict Kilopass' own 1T patent.
>
> ¶ 14: Kilopass' PowerPoint distributed to Sidense's customers, on at least August 8, 2011, stating that "Sidense continues to offer [its 1T intellectual property] for license . . . knowing [that a] substantial portion of its ['855] patent claims have been rejected."
> ¶ 17: Kilopass' threats to sue Sidense's customers and potential customers as direct patent infringers, made at least in December 2010 and February 2011.
>
> ¶ 18: Kilopass' statements made in June and July 2011 that Sidense is not financially stable, not commercially viable, and would soon be bankrupt and out of business.
>
> ¶ 19: Kilopass' statements falsely implying that Sidense was refusing to defend its customers against alleged infringement.

Pl.'s Opp. at 2.  Sidense's SAC includes the same five causes of action alleged in the FAC.  Sidense alleges that the statements set forth in paragraphs 10, 14, 17, 18, and 19 constitute defamation; that the "White Paper" illustration set forth in paragraph 11 constitutes false advertising; and the statement alleged in paragraph 14 constitutes both.  As per the Court's January 23, 2012 Order, Sidense's latter three claims – for intentional interference with contractual relations, intentional interference with prospective economic advantage, and violation of the UCL – hinge on its success in establishing a defamation or false advertising claim.  *See* Dkt. 38.

On July 6, 2012, Kilopass moved for summary judgment on Sidense's claims.  *See* Dkt. 64. Sidense filed an opposition on July 20, 2012.  *See* Dkt. 89.  Kilopass replied on July 31, 2012.  *See* Dkt. 86.  Along with its reply, Kilopass filed a number of objections to the evidence Sidense filed in support of its opposition to Kilopass' motion for summary judgment.  *See* Dkt. 87.  Kilopass' objections will be addressed where necessary.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (observing that there is no genuine issue of fact "where the only evidence presented is 'uncorroborated and self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c). Hearsay statements found in affidavits are inadmissible. *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

**DISCUSSION**

Sidense alleges that five of Kilopass' statements constitute defamation (those set forth in the

4

United States District Court
For the Northern District of California

SAC ¶¶ 10, 14, 17, 18, and 19), and two constitute false advertising (¶¶ 11 and 14).  Kilopass does not deny making the statements; instead, it largely argues that the statements are true.  It also argues that Sidense has failed to establish any harm from the statements.  Sidense argues that the statements are demonstrably false, and that it has established harm.  For many of the statements, Sidense argues in the alternative that it need not establish harm, because the statements are defamatory *per se*.  The Court will first address the allegations of defamation, and  then turn to false advertising and the remaining claims.

### 1.    Defamation

Defamation is an invasion of the interest in reputation.  *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999).  Under California law, the tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.  *Id.* (*citing* Cal. Civ. Code §§ 45, 46; 5 Witken, Summary of Cal. Law (9th ed. 1988) Torts § 471, at 557-58).[2] Publication means communicating to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made.  *Id.* at 645.  Publication need not be to the "public" at large; communication to a single individual is sufficient.  *Id.* (*citing Cunningham v. Simpson*, 1 Cal. 3d 301, 306 (1969)).

In all cases of alleged defamation, whether libel or slander, "the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose."  *Maldonado*, 72 Cal. App. at 646 (*citing, e.g., Campanelli v. Regents of University of California*, 44 Cal. App. 4th 572, 581-82 (1996)).  The burden rests with the defendant to "justify" or show the truth of the statements.  *Id.*

California Civ. Code § 45a sets forth the elements of defamation *per se*: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate

---

[2]The statutory definition of libel is found in Cal. Civil Code § 45: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

result thereof."  Where a plaintiff can prove libel *per se*, damage to reputation is presumed, so that the plaintiff need not introduce evidence of actual damages to recover compensatory, or, in appropriate cases, punitive damages.  *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 382 (Ct. App. 6th. Dist. 1986).

The question of whether a statement is reasonably susceptible to a defamatory interpretation is a question of law for the trial court.  *Maldonado*, 72 Cal. App. 4th at 647.  "Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood."  *Id.*

As noted above, Sidense argues the allegations made in ¶¶ 10, 14, 17, 18, and 19 were defamatory.  The Court addresses each allegation in turn.

## A.     SAC ¶ 10

Paragraph 10 of the SAC alleges that Kilopass made a statement on May 22, 2008  to a potential customer that based on Kilopass' own "in silicon" evaluation of 1T bit cells (the type of technology licensed by Sidense), the technology was not commercially viable.  The claim is based on an email that a Kilopass employee wrote to Samsung while Kilopass and Sidense were competing to license NVM technology to Samsung.  The Kilopass employee wrote:

> We have discussed in our meeting with your team that Kilopass owns US patents in the 1-T split gate approach.  We even have evaluated this 1-T technology in silicon many years ago.  We have concluded that the 1-T split-gate technology has some very fundamental problems in reliability for high-volume production. This fundamental reliability problem cannot be overcome easily.  This 1-T approach is not a technology that can support any reliable high-volume multiple-lot silicon production even if the technology can be demonstrated to be working in a very low quantity proto-type test chip.

Tadlock Decl., Ex. 1.[3]  Sidense argues that this is a statement about its technology, and that describing

---

[3]Kilopass objects to much of the evidence submitted in connection with the opposition to its summary judgment motion, including this email. With regard to the issues on which the Court has granted summary judgment, the Court does not rely on evidence to which Sidense has raised an objection. With regard to the issues on which the Court has denied summary judgment, the Court finds that there is sufficient admissible evidence to raise a triable issue of fact, and the Court finds it unnecessary at this juncture to rule on the parties' evidentiary objections.  The Court will rule on evidentiary objections as necessary in connection with the parties' motions in limine and at the time of trial.

United States District Court
For the Northern District of California

it as not reliable or not manufacturable has a "natural tendency to injure Sidense in its occupation." Pl.'s Opp. at 5.

An initial question exists as to whether this email even refers to Sidense and its products. Sidense argues that though it nowhere mentions Sidense by name, this statement "plainly implicates Sidense's technology." Pl.'s Opp. at 6 (*citing DiGiorgio Fruit Corp. v. Amer. Fed. of Labor and Congress of Indus. Orgs.*, 215 Cal. App. 2d 560, 569 (1963) ("There is no requirement that the person defamed be mentioned by name. It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff."). Kilopass was marketing to Samsung its 2T (meaning two transistor) technology. Def.'s Reply at 4. Sidense argues that the evidence shows that Samsung and Kilopass both knew that Kilopass was competing against Sidense's 1T (meaning one-transistor) technology and understood Kilopass' statements to refer to Sidense's technology. Sidense points out that Kilopass begins the email by stating "[b]esides size and power, we strongly believe that reliability and manufacturability should be compared with our competitors." Tadlock Decl., Ex. 1. Sidense also points to an email sent by Kilopass to Samsung the next day, attaching an Office Action from the USPTO on Sidense's '855 patent application, referring to it as "a letter from the US Patent office to one of our competitors using 'split-gate' bitcell." *Id.*

Kilopass argues that the email refers to its own 1T products. Def.'s Mot. at 3. Kilopass provides a declaration from its Chief Technology Officer Harry Luan stating that it began researching and developing 1T technology in 2001, and that the company tested multiple variations of 1T cells. Luan Decl. ¶ 2. He declares that from its testing, Kilopass found that 1T cells had several potential problems, and concluded 2T/1.5T technology "was more manufacturable and reliable for its customers." Luan Decl. ¶ 3. Kilopass contends that the email was simply "emphasiz[ing] the benefits of its 2T commercial technology over its 1T technology." Def.'s Reply at 4.

Beyond the quarrel over whether the email even references Sidense, Kilopass argues that the statement is true. Kilopass relies on Luan's statement that its own testing of 1T cells demonstrated manufacturability and reliability issues with 1T devices. Luan Decl. ¶ 3. Luan states that he and others studied the reliability and functionality of the 1T cells by performing various tests, and attaches a copy of sample testing data summaries from 2002. *See* Luan Decl., Ex. 1.

To demonstrate the falsity of Kilopass' statements, Sidense points to its own success. Pl.'s Opp. at 5. Sidense's Chief Technical Officer, Wlodek Kurjanowicz, states that Sidense has achieved "high yield" with its 1T technology at its customers' foundries, demonstrating "good manufacturability" and "good reliability." Kurjanowicz Decl. ¶ 5.

The Court finds that the email was not defamatory. In context, the statement is referencing Kilopass' *evaluation* of 1-T products. Tadlock Decl., Ex. 1. ("We even have evaluated this 1-T technology in silicon many years ago . . . This 1-T approach is not a technology that can support any reliable high-volume multiple-lot silicon production . . ."). A broad conclusion drawn from an evaluation is not a "false statement of fact." *See Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970 (noting that the word "evaluation" denotes opinion, not fact). The statement that a type of technology is not reliable or manufacturable in high volume production, as drawn from a company's evaluation of that technology, is too subjective and vague to be subject to a defamation claim. *See Coastal Abstract Service, Inc. v. First American Title Insurance Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" to handle a potential customer's business was "vague and subjective" and therefore not defamatory); *see also Oracle USA, Inc. v. Rimini St., Inc.,* 2010 U.S. Dist. LEXIS 116249, *8 (D. Nev. 2010) ("Statements concerning the future financial stability of a business is a non-actionable statement of opinion."). Moreover, as evidence of the falsity of the statement, Sidense points to the manufacturability and reliability of its 1-T technology in recent years. However, in 2008, when Kilopass made the statement, it did not have evidence of Sidense's later marketplace success. Sidense admits as much when it states that, "[i]n 2008, Sidense was still a new company and therefore lacked data to demonstrate that its technology had proven manufacturable and reliable over time." Kurjanowicz Decl., ¶ 8. Kilopass only had its own evaluation of the technology, and limited its statement to that evaluation.

The Court therefore GRANTS Kilopass summary judgment on the claim raised in SAC ¶ 10.

### B.     SAC ¶ 14

According to SAC ¶ 14, in at least August 2011, Kilopass sent a PowerPoint presentation to third parties entitled "Kilopass vs. Sidense: Case Summary." Tadlock Decl., Ex. 14. The presentation

contained a slide with the following statements:

- **Prosecution History of Sidense Patent 7,402,855 (aka '855)**
    - **Patent prosecution history**
      -Filed in May, '05 (priority date of May, '04)
      -Non-Final Rejection Nov, '07
      -Final Rejection May, '08
      -Approval on amended patent in July, '08
    - **Critical telephonic interview in May, '08**
      **-**All claims except claims 11-13 were rejected finally by USPTO
      -Examiner suggested adding sense amplifier to enable patentability of claims 11-14
      -But claims 1-10 are the critical anti-fuse OTP inventions (in Kilopass' patents) required to use Sidense OTP
    - **Sidense continues to offer for license even after May, '08, knowing substantial portion of its patent claims have been rejected**.

Tadlock Decl., Ex. 14 at 3.

It is the final statement that Sidense claims is defamatory.  Sidense argues that Kilopass cannot establish the truth of the statement that Sidense licensed technology knowing a "substantial portion" of its claims have been rejected, because in January 2011 – seven months before the PowerPoint was distributed – the USPTO affirmed all claims in Sidense's '855 patent, and allowed new claims to be added during *inter partes* reexamination initiated by Kilopass.  Pl.'s Opp. at 11 (*citing* Tadlock Decl., Ex. 18 (Kilopass Press Release recognizing that the USPTO granted and later affirmed the '855 patent)).

Kilopass argues that the statement is true, because it was referencing the prosecution history of the '855 patent, not subsequent events.  Kilopass notes that the original application, filed on May 6, 2005, had 29 claims.  The patent examiner rejected the majority of the claims.  Khaliq Decl., Ex. 15 (May 16, 2008 Office Action).  Though the patent issued and further activity affirmed the claims on reexamination, Kilopass argues that its PowerPoint statement is "a historical summary of the original prosecution of the '855 patent" and that "no where in this section of the presentation is there any reference to reexamination of the '855 patent because the presentation is describing facts in the 2008 time period."  Def.'s Mot. at 8.

The Court agrees with Sidense that the statement is subject to a defamatory meaning.  The August 2011 statement is in the present tense: "Sidense *continues* to offer for license even after May '08, knowing substantial portion of its patent claims have been rejected."  The most credible inference to be drawn from the statement is that Sidense continues to market and license technology to which it

holds no patent.  Kilopass has not proven the truth of that statement.

Sidense further argues that the statement is libel *per se*, because it accuses Sidense of "fraud and deception and unfair dealing with [its] customers.  Charges of this nature are libelous *per se*."  Pl.'s Opp. at 12 (*citing Rosenberg v. J.C. Penney Co.*, 30 Cal. App. 2d. 609, 620 (1939) (finding department store's description of competitor's products as "shoddy, poorly made seconds and prison made merchandise . . . being offered as first grade merchandise" libelous *per se*)).  The Court disagrees.  As noted above, libel *per se* is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact.  Cal. Civ. Code. § 45a.  Here, it is a fact that a substantial portion of Sidense's claims were rejected in May 2008.  The innuendo is that Sidense continues to license products based on the rejected claims.  That innuendo is subject to the reader's interpretation, a question for the jury and therefore not libel *per se*.  At trial, Sidense will have to establish some special damages from the statement.

Summary judgment with respect to the allegations set forth in SAC ¶ 14 as defamatory is therefore DENIED.  The Court addresses below whether summary judgment is warranted for the false advertising claim based on ¶ 14.

## C.    SAC ¶ 17

The allegations contained in paragraph 17 refer to threats made by Kilopass to sue Sidense's customers and potential customers as patent infringers in Federal District Court or as respondents in a legal action in the International Trade Commission ("ITC").  SAC ¶ 17.  Sidense provides an August 19, 2010 letter from Kilopass' lead trial lawyer to one of Sidense's customers, Fujitsu, in which Kilopass states that it intended "to request a general exclusion order from the International Trade Commission to stop the importation into the United States of all silicon devices and products containing" Sidense's technology.  Tadlock Decl., Ex. 24 (Aug. 19, 2010 Letter).  Sidense also provides a February 4, 2011 letter from Kilopass to another Sidense customer, Sony, stating that Kilopass was "preparing a 337 case for the International Trade Commission in April 2011, to stop importation into the U.S. all products containing Sidense's infringing OTP."  *Id.*, Ex. 26.  Sidense argues that these statements were defamatory because they were false: Kilopass never filed any suit against any of the

customers or in the ITC.

Kilopass responds that the statements are true. Kilopass notes that in response to its patent suit, Sidense disclaimed direct infringement, as it does not make, use, or sell any apparatus or method, but rather licenses its technology. *See Kilopass v. Sidense*, CV 10-2066, Dkt. 12 (Jul. 28, 2010) at 11. Accordingly, Kilopass has "reached out to several direct infringers to warn them of potential lawsuits." Def.'s Mot. at 10. Kilopass' Vice President of Engineering has filed a declaration stating that Kilopass has made and continues to make preparations to file potential lawsuits against Sidense's customers, including actions in the ITC and before Federal District Courts. Cleveland Decl. ¶ 7. To that end, Kilopass has performed testing of the chips of Sidense's customers in anticipation of litigation. *Id.,* Exs. 3-5. Kilopass argues that its "decision to hold off on bringing suits against direct infringers does not logically lead to the conclusion that the threats were illegitimate." Def.'s Mot. at 10.

The Court agrees. Kilopass' threats, under these circumstances, are not subject to a defamatory meaning. Whether Kilopass eventually files suit likely depends on the outcome of its indirect infringement suit against Sidense. Indeed, that would be a responsible approach to the litigation. And while Kilopass has provided evidence as to the truth of the matter, Sidense has not (and likely cannot) raise a question of fact as to Kilopass' intentions. On summary judgment, for matters on which the moving party has the burden and has demonstrated an absence of evidence to support the non-moving party's case, the non moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Sidense has done no more than to question Kilopass' intentions to file suit against its customers. This is insufficient to avoid summary judgment.

The Court therefore GRANTS Kilopass summary judgment on Sidense's defamation claim with respect to the allegations of paragraph 17.

### D.    SAC ¶ 19

The parties group the allegations of paragraph 19 with those of paragraph 17 because they both relate to Kilopass' litigation against Sidense. The allegations in paragraph 19 refer to a June 28, 2011 email sent by Cheng, Kilopass' CEO, to several Sidense customers. In the email, Cheng states that

11

United States District Court
For the Northern District of California

Sidense "has refused to take responsibility for its customers' chips that contain the embedded Sidense OTP." Cheng Decl., Ex. 1. The email was sent after Kilopass subpoenaed 52 of Sidense' customers in order to obtain evidence of direct infringement. Cheng Decl. ¶ 7. Cheng states that following the issuance of the subpoenas, several subpoenaed parties directly contacted Kilopass concerned about the legal process that the subpoenas would entail. *Id.* Cheng, in turn, was concerned that the third parties who had received the subpoenas "would misunderstand the reasoning behind these subpoenas." *Id.* ¶ 5. In order to allay the concerns that the third parties had in connection with the subpoenas, Kilopass sent the following mass email:

> First, the genesis of the subpoena issued to your company: During the course of the patent litigation, Sidense refused the normal information request made by Kilopass. The basis for Sidense's refusal is due to their legal defense position. *Sidense has refused to take responsibility for its customers' chips that contain the embedded Sidense OTP*, which stands accused of patent infringement. Sidense represented to the court that it was merely a licensor of technology and that its customers were the ones "who download 'GDS' files containing those designs from Sidense's server in Ottawa, and who use those files to build semiconductor devices in which the memory cells manufactured according to Sidense's designs are embedded." *With Sidense indicating to the court that it is its licensees who should be charged as direct infringers*, Kilopass had no choice but to send out the subpoena to all Sidense licensees. Sidense remains charged with inducement to infringe and contributory infringement related to its customers products. No customer is a party to the lawsuit.

Cheng Decl., Ex. 1 (emphasis added).

Kilopass argues that its statements are true; that because Sidense has not stipulated to direct infringement by its customers if the products are found to infringe, Sidense has, in fact, "refused to take responsibility for its customers' chips." Def.'s Reply at 12. In the alternative, Kilopass argues that it reflects a statement of opinion that cannot be proven false. *Id.* As for the statement "Sidense [is] indicating to the court that it is its licensees who should be charged with direct infringement," Kilopass argues that the statement is a fair and reasonable interpretation of Sidense's posture in the patent litigation.

The Court disagrees. Simply asserting in a patent infringement suit that one is not a direct infringer under 35 U.S.C. § 271(a) because it does not make, use, or sell the technology at issue is not the same as "refus[ing] to take responsibility for its customers'" use of the licensed technology. Moreover, in disclaiming direct infringement, Sidense did not suggest that its licensees "*should be*

United States District Court
For the Northern District of California

charged with direct infringement."  That is particularly true in this case, where Sidense offers its

customers indemnification against claims of infringement for use of Sidense's technology.  Khaliq

Decl., Ex. 21.[4]  "The defamatory character of language is measured 'according to the sense and meaning

. . . which such language may fairly be presumed to have conveyed to those to whom it was published.'"

*Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 447 (Ct. App. 1st Div. 1993).  Here, the "sense

and meaning" of the statement is that Sidense abandoned its customers in the face of a patent

infringement suit.  Kilopass has not established the truth of that statement.

Sidense again argues that the statement is libelous *per se* and that it therefore need not establish

special damages.  Pl.'s Opp. at 15 (*citing DiGiorgio Fruit*, 215 Cal. App. 2d at 572 ("[I]f a publication

reasonably and naturally has the effect of brining the business of the corporation into public contempt,

and of making it odious in the estimation of those with whom it has business dealing or connections,

then the law will presume the publication is actionable per se without . . . proof of special damage.")).

Again, the Court disagrees.  An understanding of the defamatory nature of the statement – particularly

what "taking responsibility" means in this context – requires at least some understanding of extrinsic

facts, including the nature of direct versus indirect patent infringement lawsuits.  Thus Sidense will have

to establish special damages at trial.[5]

The Court DENIES Kilopass' motion for summary judgment on the claim for defamation with

respect to ¶ 17.

**E.    SAC ¶ 18**

The allegations in paragraph 18 of the SAC refer to various statements made by Kilopass and

Cheng that Sidense is not financially stable, "including but not limited to statements that Sidense is no

longer commercially viable, that Sidense would soon be bankrupt, and that Sidense would soon go out

of business."  SAC ¶ 18.  In an August 5, 2011 email to a potential customer, Kilopass stated that

---

[4]Kilopass not only recognizes that Sidense offers this indemnification, but uses it as evidence that Sidense is in financial trouble, as discussed below.

[5]While Kilopass argues that it should be granted summary judgment because Sidense has not proven special damages, Sidense has raised sufficient questions of material fact with respect to damages, which is all that is necessary here. *See, e.g.,* Tadlock Decl., Exs. 22, 41.

"Sidense has also alleged that its licensees are the direct infringers (if/when proven).  When coupled with its possible bankruptcy filing, it has motivated us to seek direct resolution with licensees now . . ."  Tadlock Decl., Ex. 15.  In another email to a Sidense customer, Kilopass discusses "concerns over Sidense's viability."  *Id.*, Ex. 33.

Kilopass argues that the statements are true.  It provides evidence that Sidense has been operating at a loss every year since 2006.  Khaliq Decl., Ex. 19.  It also notes that Sidense offers its customers unlimited indemnification against claims of infringement for use of Sidense's technology, which Kilopass argues "create[s] a high-risk profile for any business."  Khaliq Decl., Ex. 21 (Sidense End User License Agreement); Cheng Decl. ¶ 7.  In the alternative, Kilopass also argues that statements about a competitor's future financial conditions are non-actionable statements of opinion that cannot be proven true or false.  Def.'s Reply at 13 (*citing Oracle USA, Inc. v. Rimini St., Inc.,* 2010 U.S. Dist. LEXIS 116249, *8 (D. Nev. 2010) (holding that "statements concerning the future financial stability of a business is a non-actionable statement of opinion.").

The Court finds that Kilopass has not established the truth of its statements.  At deposition, Cheng acknowledged that he has no personal knowledge of Sidense's finances.  Tadlock Decl., Ex. 44 (177:9-11).  The fact that a start up company is operating a loss is not evidence that it is facing bankruptcy.  To the contrary, Sidense's CTO states that its bookings in the final quarter of 2011 were the highest in its history.  Kurjanowicz Decl. ¶ 9.  The truth of the statement is a question of material fact.

Moreover, while the Court agrees that generalized statements about a competitor's future financial conditions are not actionable, the alleged statements here insinuate the imminent financial collapse of Sidense.  In *Oracle v. Rimini*, an Oracle employee allegedly said that Rimini's business model was "presently unsustainable and that [the defamed] would not still be in business in two years." 2010 U.S. Dist. LEXIS 116249 at *8.  Here, the emails discuss Sidense's "possible bankruptcy filing," suggesting that such filing was imminent or had already occurred.  The statements sufficiently address the current status of Sidense's finances to render them non-opinion statements and potentially defamatory.

The Court DENIES Kilopass' motion for summary judgment on the defamation claim with

14

respect to ¶ 18.

In sum, the Court GRANTS Kilopass' motion for summary judgment on the claim for defamation with respect to ¶¶ 10 and 17.  The Court DENIES the motion with respect to ¶¶ 14, 18, and 19.

## 2.  False Advertising

Sidense contends that the statements set forth in paragraphs 11 and 14 constitute false advertising under the Lanham Act.  The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.  15 U.S.C. § 1125(a)(1)(B); *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

### A.  SAC ¶ 11

Paragraph 11 of the SAC refers to a May 2009 "White Paper" published by Kilopass' marketing director, Linh Hong, entitled "Comparison of Embedded Non-Volatile Memory Technologies and Their Applications."  SAC ¶ 11.  The White Paper included the statement "Kilopass was the first to pioneer antifuse in a standard CMOS process with no additional processing steps.  Kilopass holds patents for several flavors of the cells, including the 1T and 2T," followed by two antifuse bit cell illustrations labeled "Antifuse Bit Cell-2T" and "Antifuse Bit Cell-1T."  *Id.*  Sidense claims that though this statement implied that the bit cells were both Kilopass' patents, the 1T illustration actually depicted Sidense's 1T bit cell.  *Id.*  Sidense contends that "to persons familiar with the Sidense bit cell, this would have suggested that the Sidense bit cell structure was specifically disclosed in the Kilopass 1T patents and that, rather than having been independently developed, Sidense's bit cell was merely a copy of the Kilopass bit cell."  *Id.*  Sidense further argues that "to such persons, this also would have suggested that

United States District Court

For the Northern District of California

Sidense would almost certainly be found to have infringed upon the Kilopass 1T patents." *Id.*

Kilopass argues that the illustration is of one of its own 1T bitcells.  Kilopass states that the figure "is an accurate conceptual diagram of Kilopass' 1T technology as shown by the [transmission electron microscopy] results of three 1T cells developed by Kilopass in early 2000."  Def.'s Mot. at 18. In response, Sidense provides sufficient evidence to raise a question of fact as to whether the illustration depicts Kilopass' or Sidense' version of 1T technology.

However, Sidense does not provide any evidence that the statement actually deceived or has the tendency to deceive a substantial segment of its audience, that the deception is likely to influence the purchasing decision, or that Sidense has been injured by a direct diversion of sales to Kilopass or the goodwill associated with its products.  *See* 15 U.S.C. § 1125(a)(1)(B).  Sidense simply argues that, "[g]iven that Kilopass publishes the White Paper on its commercial website it is reasonable to infer that persons wishing to select a NVM OTP technology vendor, as between Sidense and Kilopass, would see the White Paper, would reasonably understand Sidense's bit cell to be covered by Kilopass' patents, and would be reluctant to choose Sidense over Kilopass for that reason."  However, without any additional evidence, those are not reasonable inferences.  The Court would have to infer that a customer would 1) see the White Paper on Kilopass' website, 2) have knowledge of Sidense's 1T bit cell technology, 3) recognize the image as related to Sidense's technology, 4) believe that because it is a Kilopass' White Paper Kilopass must own the patent to the illustrated technology, 5) deduce that Kilopass' technology therefore covers Sidense's technology, and 6) choose to license technology from Kilopass rather than Sidense based on that fact.  Without any actual evidence, this logical string is far too attenuated to defeat summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].").

The Court GRANTS summary judgment on the claim for false advertising with respect to the allegations in ¶ 11.

**B.     SAC ¶ 14**

The allegations of paragraph 14 were described above with respect to the defamation claim based

United States District Court

For the Northern District of California

1  on the same statement. *See* Section 1.B.  In a PowerPoint presentation to various customers, Kilopass

2  stated that, "Sidense continues to offer for license even after May, '08, knowing substantial portion of

3  its patent claims have been rejected."  Tadlock Decl., Ex. 14 at 3.  The Court found that Kilopass has

4  failed to prove the truth of the statement and therefore denied summary judgment on the defamation

5  claim.

6        Kilopass argues here that the presentation was not a commercial advertisement about Kilopass'

7  own or Sidense's product and thus Sidense cannot prove a Lanham Act claim.  Def.'s Mot. at 19.

8  Kilopass argues that "rather, its purpose was to educate Kilopass' internal sales and marketing team and

9  inform a few select customers on the status of the litigation so that they could be better equipped to

10  handle questions from their customers." *Id.*  Kilopass also argues that Sidense has provided no evidence

11  that the statement deceived or had the tendency to deceive any customer or potential customer, or that

12  any customer or potential customer relied on the statement in making a purchasing decision or that the

13  statement lessened the goodwill towards Sidense's products. *Id.*

14        The Court disagrees on both counts.  With respect to constituting a commercial advertisement,

15  the Ninth Circuit has held that "[w]here the potential purchasers in the market are relatively limited in

16  number, even a single promotional presentation to an individual purchaser may be enough to trigger the

17  protections of the Act." *Coastal Abstract Service, Inc.*, 173 F.3d at 735.  Kilopass acknowledges that

18  "the antifuse market is small with low profits margin, and competition is fierce."  Def.'s Reply at 1.

19  Even accepting Kilopass' claim that the presentation was only sent to "a few select customers" as true

20  (a statement Sidense disputes), the PowerPoint presentation constituted a commercial advertisement.

21        The Court also finds that Sidense has sufficiently raised a question of fact as to whether the

22  statement deceived or had the tendency to deceive potential customers, and whether any potential

23  customer relied on the statement in making a purchasing decision or that the statement lessened the

24  goodwill towards Sidense's products. *See* 15 U.S.C. § 1125(a)(1)(B).  Sidense provides an email from

25  a customer who, according to Sidense, saw the presentation and was concerned that Sidense is "still

26  selling their IP ever [sic] after knowing substantial portion of its patent claims have been rejected."

27

28

United States District Court
For the Northern District of California

Tadlock Decl., Ex. 22.[6]  The email asks "Would you please confirm whether there is still on-going or close to be done issue with Sidense? If they are going out of business, we all need to be careful."  *Id.*  Moreover, the statement on its face, while not libelous *per se*, has a tendency to deceive and lessen goodwill, as it may suggest that Sidense is licensing technology it does not have ownership in.  The Court finds that there are sufficient questions of material fact with respect to whether the statement deceived any customers, and whether it lessened goodwill toward's Sidense's products.

The Court DENIES summary judgment on the false advertising claim with respect to the allegations contained in ¶ 14.

### 3.     Intentional Interference with Contractual Relations

To establish liability for intentional interference with contractual relations, a plaintiff is required to prove: (1) it had a valid and existing contract with a third party; (2) defendant had knowledge of this contract; (3) defendant committed intentional and unjustified acts designed to interfere with or disrupt the contract; (4) actual interference with or disruption of the contractual relationship; and (5) resulting damages.  *Shamblin v. Berge,* 166 Cal. App. 3d 118, 123 (1985).  To the extent that the allegations set forth in ¶¶ 14, 18, and 19 survive summary judgment, they may form the basis of "unjustified or wrongful" conduct with respect to the this claim.  *See Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 995 (1997) (plaintiff must show "the breach was caused by the defendant's unjustified or wrongful conduct"); *see also* Jan. 23, 2012 Order, Dkt. 38 ("In its discussion of intentional interference and unfair competition (the third through fifth causes of action), the Court adopted Sidense's characterization of the defamation and false advertising claims (i.e., the first and second causes of action) as 'predicate acts' on which the latter claims relied.") (*citing* Sidense Opp. to Kilopass' Mot. to Dismiss, at 24-25)).  The allegations that survive are the PowerPoint presentation statement that Sidense continues to offer technology despite rejected claims (¶ 14), the statement that Sidense is not commercially viable and

---

[6]Kilopass objects to the admission of this email, as with most of Sidense's exhibits, on the grounds that it "misstates the evidence, lacks foundation and speculation, and [is] hearsay." Kilopass' Objections at 10.  The Court OVERRULES that objection, as the email addresses provide sufficient authentication, and the email is not provided for the truth of the matter but rather to show the impact of the presentation on the customer.

facing bankruptcy (¶ 18), and the email to Sidense's customers that Sidense is not "taking responsibility" for its customers and indicated to the Court that its licensees should be sued for direct infringement (¶ 19).

The contracts Sidense relies on are its licensing agreements with its customers. Khaliq Decl., Ex. 4 at 17. As evidence of interference and harm, Sidense provides Cheng's emails to Sidense's customers regarding Sidense's financial viability (discussed with respect to ¶ 18), wherein Kilopass discussed "converting" the licensees to Kilopass customers:

> I am writing for your help to clarify [your] disposition on Sidense license you've acquired. From a dinner meeting you had . . . I understand that the Sidense license is not in use. Can you please ask your legal department to send an official letter stating that fact  The reason is, unfortunately we are likely to initiate litigation against Sidense licensees, and we like to get this clarification so we can close the matter with you.
>
> The litigation situation is as follow: [sic]  Sidense is attempting to name its licensees as 'direct infringers' as it only licenses the GDS database. This was the reason behind our subpoena to obtain data from all licensees. Recently, due to concerns over Sidense viability, we have no choice to [sic] turn  our attention to the licensees. It's been a difficult process and I am looking forward to finishing the conversion of licensees. Fortunately, we've done three and several others in discussion. It's a long road though.

Tadlock Decl., Ex. 33.  While Kilopass raises arguments with respect to the conclusions that can be drawn from this email, including the reasoning behind the licensees' decisions to convert, there are sufficient questions of fact presented to defeat summary judgment.  Sidense also provides evidence that three of its customers have renegotiated their contracts to require Sidense to provide limitless indemnification "in response to Kilopass' threats." Tadlock Decl., Exs. 34-36.  Questions of material fact exist as to whether Kilopass' conduct actually disrupted Sidense's licensing agreements by causing the licensees to "convert" or seek material alterations to the terms of the contracts.  Questions of fact also exist with respect to resulting damages.

Kilopass' motion for summary judgment on the intentional interference with contractual relations claim is DENIED.

### 4.    Intentional Interference with Prospective Economic Advantage

In order to succeed on a claim for intentional interference with prospective economic advantage,

United States District Court
For the Northern District of California

a plaintiff must prove: (1) it had an economic relationship with a third party containing the probability of a future economic benefit; (2) defendant had knowledge of this relationship; (3) defendant committed intentional and unjustified acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) resulting damages. *Shamblin v. Berge,* 166 Cal. App. 3d 118, 123 (1985). To prevail, Sidense must show that "the defendant's conduct was independently wrongful." *Korea Supply Co. v. Lockheed Martin Corp*, 29 Cal. 4th 1134, 1158 (Cal 2003).

In support of this claim, Sidense only relies on Kilopass' statements made to Samsung while the two companies competed for Samsung's business. These statements were alleged in SAC ¶ 10 and discussed *supra*; in an email to Samsung, Kilopass stated that 1-T technology was not reliable or manufacturable in high volume. Tadlock Decl., Ex. 1. The Court has already found that the statements were not defamatory. The Court therefore finds that the email cannot form the basis of a claim for intentional interference with prospective economic advantage.

The motion for summary judgment with respect to the intentional interference with prospective economic advantage claim is GRANTED.

### 5.   Unfair Competition Under California Business and Professions Code § 17200

Sidense brings its claims pursuant to Cal. Bus. and Prof. Code § 17200, arguing that Kilopass' statements constitute "unlawful, unfair, or fraudulent business acts or practices." The "unlawful" practices prohibited by § 17200 are any practices forbidden by law; in this sense, § 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under § 17200. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (Ct. App. 2nd Dist. 1994). Summary judgment is therefore DENIED under this prong of § 17200 with respect to the allegations described in ¶¶ 14, 18, and 19 of the SAC.

Kilopass also moves separately for summary judgment with respect to the "unfair" and "fraudulent" prongs of § 17200. Sidense provides no opposition in its papers to Kilopass' arguments; it only argues that "to the extent there are issues of fact under the 'borrowed' laws, the Court should deny the motion." Pl.'s Opp. at 25. The "borrowing" portion of the § 17200 refers only to the "unlawful" prong. Without opposition, the Court GRANTS Kilopass summary judgment with respect

to the unfair and fraudulent prongs of § 17200.

## CONCLUSION

Kilopass' motion for summary judgment on Sidense's defamation claims based on the allegations set forth in SAC ¶¶ 10 and 17 is GRANTED; it is DENIED with respect to the allegations described in ¶¶ 14, 18, and 19. The motion on Sidense's false advertisement claim based on the allegation set forth in ¶ 11 is GRANTED; it is DENIED with respect to the allegation described in ¶ 14. The motion on Sidense's claim for intentional interference with contractual relations and § 17200 is DENIED. The motion on Sidense's claim for intentional interference with prospective economic advantage is GRANTED. The motion on Sidense's claim under § 17200 is DENIED with respect to the "unlawful" prong, and GRANTED with respect to the "unfair" and "fraudulent" prongs.

**IT IS SO ORDERED.**

Dated: August 16, 2012

_____
SUSAN ILLSTON
United States District Judge